Dennis Wayne MORR, Appellant,

v.

The STATE of Texas, Appellee.

No. 60396.

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 19, 1979.

Rehearing En Banc Denied Oct. 31, 1979.

Jeffie J. Massey, Dallas, for appellant.

Henry M. Wade, Dist. Atty., Ronald D. Hinds and Michael E. Keasler, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for the unlawful possession of cocaine, where the punishment was assessed by the jury at ninety-nine years' imprisonment after a verdict of guilty and a finding that appellant had been previously convicted of burglary as alleged.

■ At the outset we shall consider appellant's contention that the evidence is not sufficient to sustain the conviction.

Omitting the formal parts, the indictment charged the appellant "on or about the 10th day of November in the year of our Lord One Thousand Nine Hundred and 77 in the County and State aforesaid, did unlawfully, knowingly and intentionally possess a controlled substance, namely, cocaine . . ."

Appellant calls attention to *Guitierrez v. State*, 533 S.W.2d 14 (Tex.Cr.App.1976), which held that in most narcotic possession cases "In order to sustain a conviction, the State must prove: (1) that the accused exercised actual care, control and management over the narcotic or dangerous drug, and (2) that he knew the object he possessed was contraband." See also *Higgins v. State*, 515 S.W.2d 268 (Tex.Cr.App.1974); *Woods v. State*, 533 S.W.2d 16 (Tex.Cr.App. 1976); *Duff v. State*, 546 S.W.2d 283 (Tex. Cr.App.1977); *Rice v. State*, 548 S.W.2d 725 (Tex.Cr.App.1977).

Appellant argues, among other things, that the State failed to prove, beyond a reasonable doubt, that he knew that the thing he allegedly possessed was cocaine.

In the late afternoon of November 10, 1977, Dallas city police officer Q. D. Stevens received a tip from an informer, who in the past had provided information proven to be correct, that appellant was going to be involved in a *marihuana* transaction that afternoon. Appellant's apartment was placed under surveillance. Somewhere between 6:30 and 7 p. m. on the date in question appellant arrived at the apartment complex in a 1969 green Oldsmobile. After appellant left the car and apparently went to his apartment about an hour or hour and a half later, approximately 8:30 p. m., appellant returned to the car. In the interim, the time not being designated, officer Stevens, who had the car under surveillance, by virtue of street lights, approached the car and looked in. He did not see anything on the front seat or on the rear floorboard. When the appellant returned to the car, he was observed to open the trunk, but no one saw what he was doing inside the trunk. Appellant closed the trunk and got in the Oldsmobile and drove to Mesquite. He was followed by Dallas city police officers. He stopped at an apartment complex and went into an apartment for about fifteen minutes. When he emerged from the apartment, he carried a brown paper sack. He entered the Oldsmobile and drove away to-

wards Dallas. Later when the speed of the car appellant was driving increased ". . . up to 80 or 90 miles an hour," a marked police vehicle was contacted and a uniformed officer stopped the car appellant was driving. The uniformed officer found a syringe in appellant's shirt pocket containing a liquid. Officer Mee, who had been assisting officer Stevens in the surveillance, arrived shortly after the stop and searched the car appellant was driving. No marihuana was found. The brown sack found in the front seat contained bottles of pills. On the floorboard of the back seat Mee found a box a little larger than a shoe box which had some pliers and a can of motor oil in it. On top of the box were some vials. Mee, without any effort to establish his expertise and without objection, testified: "It's a vial that you test cocaine with, remove this top right here and take a pinch of cocaine, and put it in here and if it is cocaine, it will change to the color of blue." It is not clear from the record how many vials were found, but it appears only two had a bluish residue. Mee said, "Point of it being cocaine, I couldn't definitely say it was cocaine until a chemical analysis had been run." The appellant was arrested for possession of the pills and later that night was charged with possession of cocaine. The chain of custody of the items seized was established. It was shown that the syringe did not contain a controlled substance. It was agreed the pills in the bottles in the brown sack were caffeine pills. Dr. W. T. Lowery, a chemist, testified that the substance submitted to him by the police, apparently one or two vials containing a bluish residue, contained .38 milligrams [1] of cocaine, which was 0.5% of the total content tested. The direct examination of Dr. Lowery reflects:

"Q. Okay. And let me ask you, Dr. Lowery, if you are familiar with a device such as this, as a cocaine tester? Have you even seen one before?

"A. I have seen it. I have never used it.

"Q. Okay, are you familiar with the operation of it in terms of does it—if cocaine is placed in cocaine tester, does it turn the chemical in the tester a bluish color?

"A. I believe it does.

"Q. You personally haven't used it?

"A. No, I haven't."

Later he testified that he was not sure of the exact chemicals in the testers but he wouldn't think the chemicals were fit for human consumption and that if cocaine were added it "wouldn't be a good idea for somebody to try and inject that into their body."

Testifying, the appellant stated he had borrowed the car involved from a friend on the afternoon in question and didn't inspect it and didn't suspect that any kind of illegal narcotics were in the car. He related the owner of the car was Mrs. Cindy Castro Wood. There was no showing to the contrary. From the time appellant came under surveillance about 6:30 p. m. until arrested he was not seen to enter or to reach into the back seat area.

There was no marihuana found to correspond with the informant's tip. The pills found were caffeine pills. There was no controlled substance in the syringe found. The vials found in the back floorboard were described as cocaine testers, but only two had a bluish residue. Officer Mee related it couldn't be definitely said to be cocaine without a chemical analysis. The chemist testified that the substance submitted to him contained, after chemical analysis, cocaine which was .05% of the entire matter or .38 milligrams. He had never used cocaine testers and just believed it turned blue when cocaine was added to the chemicals in the tester. He didn't know. The vial or vials with a blue residue were on a box on the floorboard of the back seat of an automobile which belonged to another individual from whom appellant testified he had borrowed the same. Appellant, while

---

1. Dr. Lowery testified that there are 1,000 milligrams per gram, and that there are 28.035 grams to an ounce and that the amount of cocaine involved was a really small amount.

under constant surveillance, was never seen in the back seat or to reach into that area.[2]

The State has the burden of establishing by competent evidence an affirmative link between the accused and the contraband. *Payne v. State,* 480 S.W.2d 732 (Tex.Cr. App.1972); *Abercrombie v. State,* 528 S.W.2d 578 (Tex.Cr.App.1974). In furnishing the affirmative link between the accused and the narcotic, the accused is alleged to have possessed independent facts and circumstances must be established indicating the accused's knowledge of the narcotic as well as his control over such. *Wright v. State,* 500 S.W.2d 170 (Tex.Cr. App.1973); *Powell v. State,* 502 S.W.2d 705 (Tex.Cr.App.1973). As pointed out in *Martinez v. State,* 539 S.W.2d 885 (Tex.Cr.App. 1976), the evidence must affirmatively link the accused to the contraband in such manner that accused knew of its existence and whereabouts. See also *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr.App.1976).

We conclude that, under the circumstances, the evidence is not sufficient to show that the appellant knowingly possessed cocaine as alleged in the indictment. See *Coleman v. State,* 545 S.W.2d 831 (Tex.Cr. App.1977).

■ We also conclude that no further prosecution may be had in this cause pursuant to the holdings in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). These cases dictate that once this court has found the evidence legally insufficient, a second trial on the same charge is precluded by the double jeopardy clause of the Constitution of the United States which is applicable to the states.

The judgment is reversed and the cause remanded and prosecution ordered dismissed.

---

2. The State points out that officer Stevens looked into the rear seat area of the Oldsmobile while appellant was at his own apartment and didn't see anything. It reasons that appellant must have later placed the vials on the back floorboard. It would follow that appellant also placed the box with the motor oil and pliers there. No one, however, saw him in possession of such items or engaging in any activity in the area of the back seat. It should be remembered that Stevens' view of the back floorboard was by virtue of street lights.